IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **GINGER LEIGH SHREWSBURY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | Civil Action No.: 7:11cv229 |
| | ) | |
| v. | ) | |
| | ) | |
| **MICHAEL J. ASTRUE, Commissioner,** | ) | By: Hon. Robert S. Ballou |
| **Social Security Administration,** | ) | United States Magistrate Judge |
| | ) | |
| **Defendant.** | ) | |

## OPINION

I affirm the decision of the Commissioner in this social security appeal.

Plaintiff Ginger Leigh Shrewsbury ("Shrewsbury") filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), finding her not disabled and therefore ineligible for both supplemental security income, ("SSI"), and disability insurance benefits, ("DIB"), under the Social Security Act, ("Act"), 42 U.S.C. § § 1614(a)(3)(A); 1381-1383f.

Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before me by consent of the parties pursuant to 28 U.S.C. § 636(c)(1). The parties filed cross motions for summary judgment, which have been fully briefed and are ripe for decision. I have carefully reviewed the administrative record, the legal memoranda and argument of counsel, and the applicable law and conclude that substantial evidence supports the ALJ's decision. As such, I **DENY** Plaintiff's motion for summary judgment (Dkt # 14) and **GRANT** the Commissioner's motion for summary judgment (Dkt # 16).

1

**I.**

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that the claimant failed to demonstrate that she was disabled under the Act. Substantial evidence is such "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). I affirm the final decision of the Commissioner where substantial evidence supports the decision. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Shrewsbury bears the burden of proving that she suffers under a disability as that term is interpreted under the Act. *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)(2006)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent her from engaging in all forms of substantial gainful employment given her age, education, and work experience. *See* 42 U.S.C. §§ 423(d)(2) and 1382c(a).

The Commissioner uses a five-step process to evaluate a disability claim. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the

claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. *Heckler v. Campbell*, 461 U.S. 458, 460-462 (1983); *Johnson v. Barnhart*, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the Residual Functioning Capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); *Taylor v. Weinberger*, 512 F.2d 664, 666 (4th Cir. 1975).

## II.

### Social and Vocational History

At the time of the hearing before the administrative law judge ("ALJ"), Shrewsbury was fifty years old making her an "individual closely approaching advanced age" on the alleged disability onset date. *See* 20 C.F.R. 404.1563 and 416.963. Shrewsbury graduated high school and worked as a sales attendant, unskilled light work; material handler, semi-skilled light work; and care giver, semi-skilled medium work. (R. 29, 51-52, 184, 202, 206.) Shrewsbury testified that her last job ended in February 2008, but that she did not stop working due to any illness or impairment. (R. 31-32.) Thereafter, Shrewsbury applied for and received unemployment benefits beginning in the third quarter of 2008 and continued to receive unemployment benefits through at least June 3, 2010, the date of the hearing before the ALJ. (R. 32-36.) To continue receiving unemployment benefits, Shrewsbury certified to the Virginia Employment Commission every two months she was ready willing, and able to work. *Id.* Shrewsbury

3

testified that, while receiving unemployment benefits, she looked for cashier jobs at Wal-Mart, K-Mart and the Dollar Stores. (R. 32-33.)

Shrewsbury lives alone in an apartment and her daily activities include taking care of her personal needs, cleaning, laundry, and sweeping. (R. 44-45, 194, 221, 223.) Shrewsbury, also, regularly sees her friends, shops, goes to church, and walks to the park. (R. 195-96, 224-227.)

**Claim History**

On March 25, 2008, Shrewsbury protectively filed for SSI and DBI claiming that her disability began on February 25, 2008 due to fibromyalgia, arthritis, depression, anxiety[1], and hypothyroidism. (R. 15.) On July 10, 2008, the Commissioner denied Shrewsbury's application for benefits and confirmed the decision on reconsideration on December 23, 2008. (R. 10, 69-70, 90-91.) ALJ Steven A. De Monbreum held an administrative hearing on June 3, 2010 to consider Shrewsbury's disability claim. (R. 10-20.) Shrewsbury was represented by counsel at the hearing, which included testimony from Shrewsbury and an independent vocational expert called on behalf of the Commissioner. (R. 25-64.)

The ALJ issued his opinion on June 22, 2010 finding that Shrewsbury's fibromyalgia and arthritis were severe impairments. (R. 12.) Neither of these impairments, individually or collectively, met or medically equaled any of the agency's listed impairments. (R. 14.) The ALJ determined that Shrewsbury had a RFC to perform medium work as defined in 20 C.F.R. 404.1567(c), 416.967(c). (R. 15.) The ALJ found that Shrewsbury is capable of performing her past relevant work, but with additional limitations which prevent her from performing the full range of medium work. (R. 19.) Nevertheless, based on the vocational expert's testimony, the ALJ determined that given Shrewsbury's age, education, and work experience, other jobs exist in

---

[1] Shrewsbury was awarded SSI and DBI as of March 21, 2004 due to anxiety and depression with benefits ceasing on January 1, 2006. Benefits ceased after Shrewsbury's mental condition improved and she was able to return to work full-time.

significant numbers in the national economy at the semi-skilled and light levels. (R. 19-20.) On March 18, 2011, the Appeals Counsel denied Shrewsbury's request for review and this appeal followed. (R. 1-3.)

Shrewsbury files this appeal asserting (1) that the ALJ improperly evaluated her pain complaints and assessed her credibility and (2) that the ALJ incorrectly assessed the functional limitations caused by her obesity.

### III.

**ALJ's Credibility Determination**

Shrewsbury argues that the ALJ erred in finding her subjective complaints of pain and limitations from her fibromyalgia and spinal arthritis only partially credible. The ALJ determines the facts and resolves inconsistencies between a claimant's alleged impairments and her ability to work. *See Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). Shrewsbury's subjective complaints of disabling symptoms are not conclusive. Rather, the ALJ must examine all of the evidence, including the objective medical record, and determine whether Shrewsbury has met her burden of proving that she suffers from an underlying impairment which is reasonably expected to produce her claimed symptoms alleged. *Craig v. Chater*, 76 F.3d 585, 592-93 (4th Cir. 1996). This assessment requires the ALJ to evaluate the intensity and persistence of Shrewsbury's claimed symptoms and the affect those disabling conditions have on Shrewsbury's ability to work. *Id*. at 594-95. A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. *See Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984)(finding that because the ALJ had the opportunity to observe the

demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.)

The ALJ determined Shrewsbury's testimony regarding her limitations from fibromyalgia and spinal arthritis was only partially credible. The ALJ found that the objective medical evidence lacked specific findings that Shrewsbury suffered from disabling pain. Additionally, Shrewsbury's testimony established that she collected unemployment benefits and reported during her alleged period of disability that she was able to work. The essential nature of the social security disability analysis is determining whether a claimant suffers from a physical or mental impairment which prevents her from engaging in "substantial gainful activity." *See* 42 U.S.C. §§ 423(d)(2) and 1382c(a). In simple terms, do Shrewsbury's physical and mental conditions prevent her from working? Here, at the very time Shrewsbury asserted that she could not work because of her claimed physical and mental impairments, she declared that she was "ready, willing and able" to work just so she could receive unemployment benefits. These irreconcilable claims, standing alone, provide substantial evidence to support the ALJ's finding that Shrewsbury was only partially credible.

Individual statements are deemed less credible if the level of treatment is inconsistent with the level of complaint. SSR 96-7p. Shrewsbury claims that she has severe chronic pain from her fibromyalgia and arthritis, which prevents her from working. Shrewsbury's diagnostic testing and physical examinations repeatedly produced unremarkable results. (R. 16, 287-89, 332-35, 394-419, 423-29.) Shrewsbury was never referred to a specialist regarding her fibromyalgia, and "her diagnosis has not been substantiated with trigger point signs upon examination." (R. 16, 289-90, 332-93.) Shrewsbury received only routine and conservative treatments to address her complaints. The examining provider at New Horizon Physicians

frequently urged Shrewsbury to be compliant with her treatment protocols.[2] (R. 288-89.) Mary Collette Carver, N.P., assessed Shrewsbury's fibromyalgia as stable. (R. 250.) Dr. Timothy Bierne M.D. would only prescribe non-steroidal anti-inflammatory medication due to her use of crack cocaine. (R. 252.) Notably, the only medical treatment Shrewsbury has received is prescription medication. No physician has prescribed physical therapy or any other treatment to address Shrewsbury's claimed pain and related symptoms.

Shrewsbury's medical records, including independent state agency evaluations, indicate no observable manifestations of pain, muscle spasms, or neurologic signs. (R. 16-17, 283, 246, 251, 253, 255-56, 288, 341, 344, 379, 473.) Drs. Humphries, Shahane, and McGuffin, state agency physicians, concluded that Shrewsbury is able to work at a medium level, and Shrewsbury has produced no other opinion evidence to suggest otherwise.

Shrewsbury's daily activities further undermine her contention that her impairments produce disabling pain. Shrewsbury testified that she cooks, does laundry, cares for her plants and pets, and cleans her apartment. (R. 45-46, 193-194, 221-22, 223, 225.) She regularly takes public transportation, visits with friends, goes shopping, walks to the library and the park, and occasionally attends church. (R. 33-34, 47-48, 195-96, 224, 226.)

The evidence of record supports the ALJ's conclusion that Shrewsbury's testimony regarding the severity of her symptoms and the extent to which they limit her daily activities is only partially credible. The ALJ considered the extent to which Shrewsbury's allegations were consistent with the objective medical evidence and her daily activities, and ultimately found her testimony less credible and discredited her contention that her impairments produced disabling

---

[2] Shrewsbury has seen a multitude of physicians and nurse practitioners at New Horizon, and her motion for summary judgment does not indicate if one any of them were here primary care physician.

7

pain. Thus, the record supports the ALJ's decision to discount Shrewsbury's testimony regarding the limiting effects of her impairments.

**ALJ's Analysis of Obesity**

Shrewsbury argues that the ALJ failed to find her obesity severe at step two of the disability analysis. Social Security Ruling 02-1p recognizes that for disability purposes, obesity is a complex and chronic disease. No specific weight or BMI equates with obesity being a severe impairment. Similarly, descriptive terms such as "severe," "extreme," or "morbid" do not establish whether a claimant's obesity is a "severe" impairment for disability purposes. *Id.* Rather, the ALJ must assess each case individually to determine the impact obesity has on an individual's functioning when deciding whether the impairment is severe. *Id.* The ALJ must assess the combined effect of a claimant's impairments when determining whether a claimant has a severe impairment or combination of impairments. 20 C.F.R. § 404.1523; *Walker v. Bowen,* 889 F.2d 47, 49-50 (4th Cir.1989). The regulations provide that the ALJ, "will consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523.

Here, the ALJ determined that Shrewsbury's obesity was not a severe impairment, because the record evidence did not support the conclusion that her obesity caused disabling pain or affected her respiratory or cardiovascular systems. (R. 13.) The ALJ noted that Shrewsbury's lungs were clear to auscultation, and her heart rate was normal. *Id.* The ALJ found, after reviewing the record, that Shrewsbury's obesity, on its own, did not adversely affect her ability to perform her daily activities. *Id.* The ALJ also found that obesity did not exacerbate any of Shrewsbury's other impairments. *Id.*

Shrewsbury also contends that the ALJ failed to consider her obesity at steps four and five of the disability analysis. At step four, the ALJ is required to consider the impact obesity has on a claimant's RFC, because obesity may cause serious limitations in any of the exertional functions, including sitting, standing, walking, lifting, pushing and pulling. SSR 02-1p. The ALJ may rely upon medical records which adequately show a claimant's obesity and adopt the conclusions of doctors who are aware of the claimant's obesity. *Rutherford v. Barnhart*, 399 F.3d 546, 552-53 (3rd Cir. 2005). Similarly, courts in this district have approved of an ALJ's reliance on the opinions of physicians who have considered the claimant and her obesity for purposes of satisfying SSR 02-1p. *Martin v. Barnhart*, 2012 WL 663168, at *5-*6 (W.D. Va. Feb. 29, 2012) *report and recommendation adopted sub nom. Martin v. Astrue*, 2012 WL 994903 (W.D. Va. Mar. 23, 2012); s*ee e.g., Phelps v. Astrue*, 2010 WL 3632730, at *6 -*7 (W.D. Va. Sept. 9, 2010)(finding that an ALJ properly considered claimant's obesity because he found it severe and relied on opinions of two doctors who examined the claimant and noted her height and weight); *Davis v. Astrue*, 2010 WL 424144 (W.D. Va. Feb. 3, 2010) (finding that an ALJ properly considered claimant's obesity by relying on a medical advisor, who had considered claimant's marked obesity, contemporaneous medical reports and clinical notations noting the lack of significant complaints in assessing claimant's RFC); *Bumbrey v. Astrue*, 2008 WL 5210378 (W.D. Va. Dec.11, 2008) (finding that the ALJ explicitly noted and discussed claimant's obesity and related impairments when determining her RFC).

Here, the ALJ relied on the medical records of the doctors who treated Shrewsbury's obesity and other medical conditions. (R. 13.) Indeed, the ALJ noted that Shrewsbury's radiographs and physical exams produced unremarkable findings. (R. 13, 373-94.) The treating

9

physicians attribute no cardiovascular, pulmonary, or musculoskeletal problems or exacerbations to her obesity.  (R. 246, 251, 253-55, 284, 288, 338, 341, 344, 346, 350, 373, 375, 379, 423.)

Obesity alone does "not correlate with any specific degree of functional loss." SSR 02-1p.  To that end, the claimant must present additional, obesity-related functional limitations not accounted for by the ALJ in his determination of the claimant's RFC to challenge an ALJ's obesity analysis.  *Matthews v. Astrue*, 2009 WL 497676, at *4, n.4 (W.D. Va. Feb. 27, 2009); *see also Phelps*, 2010 WL 3632730, at *7.  The medical record does not show that Shrewsbury's obesity caused her any significant limitation in her work activities identified by the ALJ or her assigned RFC.  Shrewsbury offers no additional medical evidence to establish that her obesity was disabling or had functional consequences that required the ALJ to conduct a more detailed analysis, and her medical history simply does not support the contention that her obesity was disabling or caused any limitation of function not accounted for in her RFC.  The court finds that the ALJ directly accounted for the limitations arising from Shrewsbury's obesity in his RFC analysis and relied upon medical evidence taking her obesity into account in accordance with SR 02-1p.

### IV.

For the foregoing reasons, Plaintiff's Motion for Summary Judgment will be denied, and Defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

    Entered:  July 9, 2012

    /s/ *Robert S. Ballou*

    Robert S. Ballou
    United States Magistrate Judge